IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSEPH LEE ARONSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00756-O-BP |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Joseph Aronson seeks judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Act ("SSA"). After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this case for further administrative proceedings.

**I.    STATEMENT OF THE CASE**

Aronson seeks disability benefits under Title II of the SSA. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 17-1 at Tr. 190-98. He applied for a period of disability and disability insurance benefits ("DIB") in December 2019. *Id.* His application reported disability due to post-traumatic stress disorder ("PTSD"), depression, back, shoulder, and knee problems, hearing loss, and sleep apnea. *Id.* at 217. The Commissioner denied Aronson's application initially and upon reconsideration (*id.* at 87, 92), so he requested a hearing before an administrative law judge ("ALJ"). *Id.* at 96. The ALJ conducted the hearing and affirmed the Commissioner's decision. *Id.* at 7-20.

After the Social Security Appeals Council denied further administrative review (*id.* at 1), Aronson filed this action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). He challenges whether substantial evidence supports the ALJ's assessment of his residual functional capacity ("RFC") and mental residual functional capacity ("MRFC").

## II.  STANDARD OF REVIEW

Title II of the SSA governs the DIB program. 42 U.S.C. §§ 401-434. A person is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's RFC—which includes an MRFC for claimants with mental or psychological conditions—and considers his past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done

2

"within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing []he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). While the parties devoted significant briefing to the substantial evidence standard as described in *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148 (2019), *see* ECF Nos. 24 at 6; 25 at 1-2, that case altered the standard's rhetorical phrasing, not its operative

3

substance. In any event, *Biestek* reiterated that "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." 139 S. Ct. at 1157 (citation omitted). It remains true that "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417).

The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

The ALJ conducted the sequential evaluation. At step one, he found Aronson had not engaged in substantial gainful activity since his alleged onset date of May 2, 2016. Tr. 12. At step two, he determined Aronson "has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the bilateral shoulders; obstructive sleep apnea; hypertension; and [PTSD]." *Id.* At step three, he determined Aronson's impairments do not meet those listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* Before proceeding to step four, the ALJ assessed Aronson's RFC:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform medium work as defined in 20 C[.]F[.]R[.] [§] 404.1567(c) except he can frequently reach with his bilateral upper extremities, and can frequently climb, balance, stoop, kneel, crouch, and crawl. Mentally, the claimant is limited to understanding, remembering, and carrying out detailed tasks.

*Id.* at 15. At step four, the ALJ found Aronson "is unable to perform any [PRW]." *Id.* at 18. However, based on his RFC, the ALJ determined "jobs [] exist in significant numbers in the

4

national economy that the claimant can perform." *Id.* at 19. By way of example, the ALJ found Aronson could work as a hospital food service worker, hospital cleaner, or store laborer. *Id.* Because he can perform those and other jobs that exist in significant numbers nationwide, the ALJ found Aronson not disabled at step five. *Id.*

Aronson asserts two errors mar the ALJ's evaluation: (1) "[t]he ALJ's RFC determination is not supported by substantial evidence because he based the RFC on his own lay interpretation of the record"; and (2) "[t]he ALJ's [MRFC] determination is unsupported by substantial evidence because it was based on the ALJ's lay interpretation of the medical record, and he failed to reconcile the RFC with his own mental limitation findings." ECF No. 23 at 5. The first argument is unavailing; the second persuades and thus warrants remand of Aronson's case.

### A. The ALJ applied correct legal standards to reach an RFC determination substantial evidence supports.

Aronson takes issue with the ALJ's RFC assessment and says substantial evidence does not support the ALJ's conclusion regarding his physical impairments. *Id.* at 11-14. As Aronson contends:

> In his decision, the ALJ was understandably unpersuaded by the opinions of state agency medical consultants, who found Plaintiff's physical impairments non-severe, and therefore did not find Plaintiff had any functional limitations. [Tr.] 18, 63-69, 71-77. The ALJ was also only "somewhat persuaded" by the findings of Dr. Pearson. [Tr.] 18. However, Dr. Pearson's findings could hardly be considered an "opinion" as he merely noted that *Plaintiff reported* pain in lifting over 20 and over 50 pounds. [Tr.] 475, 489, 498. This was a blatant mischaracterization of the medical evidence made seemingly in attempt to make it seem as though there was a[t] least one medical source opinion guiding the ALJ's decision. *See Sonnen v. Astrue*, No. VIC.A H-10-4109, 2012 WL 3527921, at *14 (S.D. Tex. Aug. 13, 2012) (Stacy, J.) (finding that substantial evidence does not support an ALJ's finding when he mischaracterizes medical records). The ALJ's reading of Dr. Pearson's findings fails as it [is] clear from the record that Plaintiff merely "reported" these limitations to Dr. Pearson, rather than Dr. Pearson actually opining these limitations. [Tr.] 475, 489, 498. Therefore, the ALJ did not have any medical source opinion from which to derive the RFC.

5

*Id.* at 12. Aronson's argument fails because it construes the term "medical opinion" too narrowly, and it invites the Court to impermissibly reweigh evidence by assigning less persuasive value to Dr. Pearson's report than the ALJ did.

### 1. Dr. Pearson's report is a medical opinion.

Aronson calls it a "blatant mischaracterization" for the ALJ to rely on Dr. Pearson's report as a "medical opinion." *Id.* But his briefing posits no alternative definition, forcing the Court to use the Commissioner's: "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [enumerated areas of work functionality]." 20 C.F.R. § 404.1513(a)(2). Dr. Pearson's report meets this definition since it is set forth in vocational terms and discusses Aronson's ability to move, lift varying weights, and complete a general array of tasks with different levels of impairment. *See* Tr. 35-36, 469-98. Considering Pearson's opinion fits the Commissioner's definition and Aronson presents no countervailing definition suggesting otherwise, the ALJ was justified in relying on that opinion when formulating his RFC assessment. While Aronson may not think that nomenclature is fitting and would have personally assigned Pearson's report a less formal evidentiary taxonomy, he furnishes no law supporting his stance.

Aronson emphasizes that certain limitations within Dr. Pearson's opinion came from Aronson's personal reports, rather than Pearson's clinical examinations. *See* ECF No. 23 at 12. But the law does not prohibit examining physicians from incorporating patient reports into their medical opinions. Indeed, physicians go to extraordinary lengths to gather patients' personal updates, as those reports often are invaluable in a patient's overarching healthcare plan. Far from undermining the opinion's evidentiary merit, the fact that Dr. Pearson's opinion incorporated *direct reports from Aronson* significantly increases its probative value. Had the opinion

6

exclusively regurgitated Aronson's personal reports, that would be one matter. But the opinion contained both objective medical observations *and* Aronson's personal reports, *see* Tr. 469-98, meaning the ALJ did not err in relying on it.

## 2. Substantial evidence supports the ALJ's RFC assessment.

Because Dr. Pearson's opinion fits the regulatory definition of "medical opinion," *see* 20 C.F.R. § 404.1513(a)(2), Aronson's argument essentially asks the Court to determine the ALJ improperly assessed its evidentiary value. This is something the Court cannot do. *Harris*, 209 F.3d at 417. While the Court may review the RFC assessment for substantial evidence, *see Hollis*, 837 F.2d at 1383, it may not reevaluate Dr. Pearson's opinion and thus usurp the ALJ's role. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("Under the regulations and our case law, the determination of [RFC] is the sole responsibility of the ALJ."). Considering the entire evidentiary record, Dr. Pearson's opinion included, the undersigned concludes substantial evidence supports the ALJ's RFC assessment.

ALJs assess RFC based on "the totality of the evidence." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The ALJ did so here, *see, e.g.*, Tr. 15-18, resulting in an RFC grounded in substantial evidence. *See Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417) (defining "substantial evidence" as "more than a mere scintilla but less than a preponderance"). Aronson argues that "[e]ven if one could reasonably reach the conclusion that Plaintiff could perform medium work from Plaintiff's reports to Dr. Pearson . . . this does not explain how the ALJ found Plaintiff could 'frequently reach with his bilateral upper extremities, and can frequently climb, balance, stoop, kneel, crouch, and crawl.'" ECF No. 23 at 12-13 (discussing Tr. 15). But the Court cannot substitute its judgment for the Commissioner's. *Harris*, 209 F.3d at 417. With a view

"highly deferential" to the Commissioner, *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005), the undersigned sees ample evidence to support the RFC.

  The ALJ considered evidence from state agency medical consultants ("SAMCs"), and noted their observations were grounded in the evidence cited, but was unpersuaded because their "no limitations" finding starkly contrasted with Aronson's complaints from the relevant period, as well as other objective medical sources. *Id.* at 18, 66, 74-75. The sources supporting the physical RFC are myriad. A February 2016 study revealed sleep apnea that was mild and easily controlled with a continuous positive airway pressure ("CPAP") machine. Tr. 17, 299. Tests from 2014 and 2016 showed hypertrophy not atypical for American males of Aronson's age, height, and weight. *Id.* at 17, 447, 574, 629. The hypertrophy largely stabilized without medication when Aronson gave up alcohol. *Id.* The ALJ rightly concluded those symptoms are not disabling.

  While the record contains conflicting evidence regarding Aronson's shoulder and back problems, it is far from devoid of evidence supporting the RFC. For instance, Aronson's personal reports and healthcare visits from 2015 indicated a degree of physical limitation due to back tenderness, but he described the pain as "intermittent" in subsequent visits in 2016. *Id.* at 16. In April 2016, x-rays showed "mild degenerative changes" in Aronson's acromioclavicular joint and revealed a subchondral cyst in his distal clavicle. *Id.* But Aronson demonstrated "full range of motion" and "no swelling, erythema, warmth, deformity, atrophy, or weakness" in his shoulders. *Id.* While Aronson's back problems persisted, "[n]ew lumbar spine x-ray[s] showed six non-rib bearing lumbar vertebral bodies, with minimal dextroscoliosis, maintained vertebral body height and alignment, and preserved disc spaces, with mild degenerative changes in the form of mild anterior marginal spurring." *Id.* An October 2016 motorcycle accident resulted in worsening shoulder symptoms, although Aronson reported no further shoulder issues until a standard pain

management visit in December 2019. *Id.* at 17, 611-13. Indeed, Aronson's records reveal almost no treatment for any of his allegedly disabling impairments until court-mandated treatments commenced in 2018 after Aronson was convicted for driving under the influence of alcohol ("DUI"). *Id.* at 18. Such evidence supports the limitations included in the RFC. Considering the clarity of the ALJ's explanation and the evidence supporting his RFC determination, the undersigned cannot say "no credible evidentiary choices or medical findings support the decision." *See Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417). A finding of no substantial evidence would therefore be improper. *Id.*

Aronson "has the burden of proving [his] disability by establishing a physical or mental impairment . . . If he is not able to provide sufficient medical evidence, the ALJ may make a decision based on the information available." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); 20 C.F.R. § 404.1516). The ALJ provided a robust explanation for each limitation incorporated in the RFC. Tr. 14-15. Though Aronson would have preferred a different conclusion, "experienced ALJs can draw their own conclusions based on accurate medical information." *See Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018). Absent evidence indicating the ALJ relied on inaccurate medical information, the Court should not second guess his conclusions.

> **3. The ALJ was not required to order a consultative examination, facilitate additional expert testimony at Aronson's hearing, or re-contact Aronson's treating physicians to validate the RFC.**

Robust administrative records are the bedrock of meaningful judicial review. As such, courts will not hesitate to remand cases where "the ALJ failed to fulfill his duty to develop the record adequately." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). Aronson argues that is the case here, because the ALJ—without formal medical training—allegedly based the RFC on his lay

interpretation of Aronson's medical records. *See* ECF No. 23 at 12-14. Aronson contends that "[r]ather than attempting to interpret the record himself, the ALJ should have further developed the record by ordering a consultative examination, requesting a medical expert to testify at the hearing level, or re-contacting treating sources for functional assessments." *Id.* at 13 (citing 20 C.F.R. § 404.1512). But neither § 404.1512 nor any other law supports that argument.

Had Aronson brought this appeal a decade ago, his argument would have more merit. In bygone years, 20 C.F.R. § 404.1512(e) required ALJs to recontact medical sources if they submitted inadequate evidence. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). But subsequent developments have replaced that requirement with a more lenient, discretionary obligation. *See Perry v. Colvin*, No. 13-cv-2252-P, 2015 WL 5458925, at *7 & n.9 (N.D. Tex. Sept. 17, 2015) ("[U]nder current regulations, the ALJ *may* re-contact a treating physician or other medical source *if* there is insufficient evidence to determine whether the claimant is disabled.") (emphasis added); *see also* 20 C.F.R. § 404.1520b. Thus, ALJs *may* do as Aronson suggests, but they are not *required* to do so. For now, the decision to re-contact medical sources or facilitate further source testimony is, like the decision to order consultative examinations, entirely within the ALJ's discretion. *Id.*; *see Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).

The above administrative options are applicable only where the record is devoid of substantial evidence to support an ALJ's conclusion. *See Perry*, 2015 WL 5458925, at *7 & n.9; *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *4 (N.D. Tex. Oct. 19, 2021), *rec. adopted* No. 7:20-cv-00112-O-BP, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022). As discussed above, that is not the case here. Because the ALJ's RFC assessment has a basis in substantial evidence, no further administrative steps were necessary to lend credence to the RFC. To the extent Aronson thinks the ALJ should have obtained additional information not

10

within the record, *see* ECF No. 23 at 13, his argument fails because he alone is "responsible for providing evidence [the ALJ] will use to make a finding about [his RFC]." 20 C.F.R. § 404.1545(a)(3). The burdens of proof, production, and persuasion are his, not the Commissioner's, at the RFC stage. *Audler*, 501 F.3d at 448; *see also* 20 C.F.R. § 404.1512(a)(1) ("In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled."). Aronson failed to do so, yet he seeks to pin any resulting deficiencies on the ALJ.

If the record had evidentiary deficiencies, they were not the ALJ's fault and should not be held against the Commissioner. And because the substantial evidence supports the RFC, Aronson would not be prejudiced even if the alleged deficiencies existed. *See Audler*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) ("'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"); *Russo v. Saul*, 805 F. App'x 269, 273 (5th Cir. 2020) (quoting *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)) ("An ALJ's failure to consider evidence is ground for reversal 'only if the applicant can show prejudice.'"). Because substantial evidence backs the RFC, the Court should decline to fix what is not broken.

> **B.     The ALJ deviated from correct legal standards and reached an MRFC determination substantial evidence does not support.**

Aronson also takes issue with the ALJ's MRFC assessment, asserting "[t]he ALJ's [MRFC] determination was not supported by substantial evidence because it was based on the ALJ's lay interpretation of the medical record, and he failed to reconcile the RFC with his own mental limitation findings." ECF No. 23 at 15. Aronson says this warrants remand, arguing the MRFC cannot stand in the absence of a formal medical opinion regarding his psychological conditions. *Id.* Aronson thus suggests "the ALJ had an obligation to develop the record by

11

obtaining at the very least a consultative examination." *Id.* at 15 (citing 20 C.F.R. § 404.1512). In effect, Aronson makes three arguments in one: a primary argument (the MRFC lacks substantial evidence), a secondary argument (the ALJ thus should have ordered a consultative examination), and a tertiary argument (the ALJ failed to reconcile his findings with the MRFC assessed). Aronson's third argument is meritless, but his second argument is meritorious. His first argument, while ostensibly unpersuasive, rides the coattails of his second argument and thus proves meritorious as well. The undersigned addresses them in reverse order.

> **1.  SSR 96-8p did not require the ALJ to explicitly incorporate certain limitations into the MRFC.**

Even though the ALJ provided a robust explication of the MRFC's evidentiary basis, Aronson contends the explanation fell short. As Aronson sees it, "[t]he ALJ's failure to explain and the lack of valuable opinion evidence leads to only one possible conclusion, that the ALJ impermissibly played doctor and based the RFC on his own lay interpretation of the medical record." ECF 23 at 13. But no reasonable reading of the ALJ's explanation supports the conclusion that the ALJ "failed to explain" his MRFC findings. Two SAMCs provided opinion evidence regarding Aronson's MRFC: Susan Posey, Psy.D. and Mark Schade, Ph.D. *See* Tr. 18. While Aronson stresses that "the record lacked any opinions regarding Plaintiff's mental impairments," *see* ECF No. 23 at 15, he glosses over voluminous record evidence, both subjective and objective, which speaks to Aronson's psychological conditions and supports the limitations in the MRFC. *See, e.g.*, Tr. 14, 16-18, 67-69, 75-76, 235, 310, 390-92, 398, 409, 636-42, 693, 698.

On July 7, 2020, Dr. Posey found Aronson's PTSD non-severe. Tr. 67. She evaluated his mental impairments and opined that they impose no limitation in the following realms: (1) "understand, remember, or apply information," (2) "interact with others," (3) "concentrate, persist, or maintain pace," and (4) "adapt or manage oneself." *Id.* She thus determined Aronson's

impairments would not limit his work prospects, obviating the need for a formal MRFC. *Id.* Three weeks later, Dr. Schade reviewed Dr. Posey's findings and Aronson's mental health history and agreed on all counts. *Id.* at 75-76. The ALJ was unpersuaded, as Aronson's medical records indicate his mental health imposes mild limitations on his ability to work. *Id.* at 17-18. The record is replete with evidence of Aronson's PTSD, ranging from irritability and depression to anxiety, hypervigilance, and nightmares. *Id.* at 17, 689. But throughout his examinations, Aronson "continued to exhibit good eye contact and grooming, normal speech and reaction time, and grossly intact memory, despite anxious mood (3F/173)." *Id.* at 17. He personally alleged "no problems concentrating or completing tasks" and the ALJ noted he "was fully alert and oriented and exhibited intact cognitive functioning during examinations. (1F/35; 2F/21; 3F/117/173)." *Id.* at 14. This clearly supports the mild limitations the ALJ observed.

Aronson also "experiences no problems" with daily life, he "requires no reminders for personal needs and grooming or medication," he "prepares his own meals and 'cooks pretty much anything,'" and reported that he "handles stress and changes in routine 'fine.'" *Id.* (record citations omitted). Furthermore, Aronson reported "doing very well over the previous month" and his "mental status examination remained normal." *Id.* Moreover, at the time Aronson graduated from court-mandated group meetings in the wake of his November 2018 DUI, he reported doing "handyman work" for "good pay." *Id.* at 17-18. Such evidence supports the ALJ's finding that Aronson's PTSD imposed only mild impairments on his ability to work. Thus, Aronson's issue is not that the ALJ *failed to explain* the MRFC, but simply that Aronson disagrees with it.

Aronson emphasizes SSR 96-8p in arguing "[t]he ALJ's finding of a non-severe mental impairment does not cure the error of failing to incorporate the limitations resulting from that impairment into the RFC." *Id.* at 15. But the MRFC needs no cure, as it does not suffer from the

13

infirmity Aronson suggests. While he rightly notes that "even a mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace" could have impacted his work, his criticism is misguided when he argues "the ALJ offered no explanation for why this limitation was not incorporated into the RFC, or for how the limitation was otherwise reconciled by her RFC determination." *Id.* at 16.

No formalistic rules govern how ALJs must articulate a decision, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), so long as they provide enough reasons to permit meaningful judicial review. *Kinney v. Astrue*, No. 5:09-cv-00008-C-BG, 2009 WL 2981907, at *3 (N.D. Tex. Aug. 28, 2009) (citation omitted), *rec. adopted*, 2009 WL 2981907, at *1 (N.D. Tex. Sept. 17, 2009). The Commissioner's internal rulings like SSR 96-8p are not binding precedent, "but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). But here the statutes are clear that ALJs need not explain limitations incorporated in an RFC word-for-word, so long as the explanation facilitates judicial review. *See* 20 C.F.R. § 404.1520c; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations he finds "consistent with the weight of the evidence as a whole"). While Aronson might disagree, the ALJ here satisfied that burden by providing an "accurate and logical bridge" between the evidence reviewed and the MRFC assessed. *See Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). The Court should thus decline Aronson's invitation to re-do the ALJ's work. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

> **2. Because the ALJ failed to order a consultative examination or otherwise solicit expert medical opinion supporting the mental limitations imposed, substantial evidence does not support the MRFC.**

As noted above, the ALJ provided an "accurate and logical bridge" between the evidence reviewed and the MRFC assessed. *See Price*, 401 F. App'x at 986. This rings true for the entire MRFC, including the mild limitations the ALJ imposed to account for Aronson's PTSD. But

14

because the ALJ is not a physician or expert healthcare professional, he cannot impose vocational limitations to account for a claimant's conditions absent an expert medical opinion supporting those limitations. *Ripley*, 67 F.3d at 555; *Fitzpatrick v. Colvin*, No. 3:15-cv-3203-D, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016). Aronson argues the lack of direct opinion evidence in the record regarding his psychological conditions invalidates the entire MRFC. *See* ECF No. 23 at 15-17. He articulates the crux of his critique as follows:

> At Step Two of the evaluation process, the ALJ [found] Plaintiff had moderate limitations in his ability to adapt or manage h[im]self due to this impairment, and a mild impairment in his ability to concentrate, persist, or maintain pace. Despite finding these limitations, the record lacked any opinions regarding Plaintiff's mental impairments. Thus, it would appear the ALJ once again impermissibly based the RFC on his own interpretation of the medical record.

ECF No. 23 at 15. He is correct. Thus, as he further notes, the ALJ created an incurable "evidentiary gap" by "rejecting all of the legitimate opinion evidence." *See* ECF No. 25 at 4.

The undersigned clearly understands why the ALJ would impose mild limitations based on the record evidence regarding Aronson's PTSD. But ALJs may not "play doctor" by imposing limitations unaccompanied by expert medical opinions, even if the limitations are straightforward, common-sense attempts to account for a claimant's mild symptomology. *Ripley*, 67 F.3d at 555; *Fitzpatrick*, 2016 WL 1258477, at *7-8. The ALJ provided a detailed, five-page MRFC that reflects a firm understanding of the relevant evidence, but rejects the only opinion evidence that could speak to Aronson's psychological conditions and thus validate the limitations imposed. *See* Tr. 13-18. This Court has routinely reversed the Commissioner's decision in identical circumstances. *Bowles v. Comm'r of Soc. Sec.*, 2021 WL 7451148, at *3-4 (N.D. Tex. Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022) (collecting cases and mapping the implementation of this rule in the Northern District of Texas).

To the extent Aronson presents consultative examinations as a panacea for the MRFC's evidentiary shortcomings, his argument is unavailing. *See* ECF No. 23 at 15 (contending that "absent from the record were any opinions regarding Plaintiff's mental limitations, thus to avoid prejudicing Plaintiff, the ALJ had an obligation to develop the record by obtaining at the very least a consultative examination"). As previously discussed, ALJs enjoy complete discretion regarding whether to order a consultative examination. *Jones*, 829 F.2d at 526. But in circumstances like this, ALJs must do *something* to augment their imposed limitations with expert opinion evidence— they have discretion as to the means, but not as to the ends. *Id.*; *see also Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (quoting *Ripley*, 67 F.3d at 557), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015) (recognizing *Ripley*'s principle that reversible error lies where "the record does not clearly establish" a basis for the vocational limitations imposed).

Developing the record prevents judges from playing the role of doctor, a role for which they are generally ill-equipped. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). This is true even if in cases like this, where it appears the ALJ imposed mild limitations simply to give the claimant "the benefit of the doubt" when expert opinions found the claimant's conditions entirely non-limiting. *Thornhill*, 2015 WL 232844, at *10. "While the ALJ could depart from the relevant medical opinions, it then 'became incumbent upon the ALJ to obtain an expert medical opinion' to fill the gap." *Bowles*, 2021 WL 7451148, at *3 (quoting *Thornhill*, 2015 WL 232844, at *10). Thus, the Court must reverse the Commissioner's decision no matter how understandable and reasonable the imposed limitations may be. *Id.* The undersigned is mindful that the Court will not reverse the Commissioner's decision where "the substantial rights of a party have not been affected." *Mays*, 837 F.2d at 1364. But Aronson's rights were necessarily affected when the ALJ

acted *ultra vires* to impose limitations properly assessed by a healthcare professional, rather than an administrative law judge. *Bowles*, 2021 WL 7451148, at *3-4; *see also Ripley*, 67 F.3d at 557 & n.27 (noting ALJs have "a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition would impact his ability to work, "no matter how small" the effects may be).

## IV.   CONCLUSION

In assessing Aronson's RFC, the ALJ applied correct legal standards and reached a decision substantial evidence supports. Although the ALJ imposed understandable limitations to account for Aronson's PTSD in establishing the MRFC, the ALJ deviated from correct legal standards in doing so and reached a decision substantial evidence does not support. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further administrative proceedings in which the Commissioner solicits medical opinion evidence regarding the impact of Aronson's PTSD on his work abilities.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

    **SIGNED** on May 31, 2022.

*[signature: Hal R. Ray, Jr.]*

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE